FERGUSON v. REYNOLDS et al.

No. 3205.   Decided Nov. 16, 1918.   (176 Pac. 267.)

1. PROPERTY—INJURY DUE TO OPERATION OF AUTOMOBILE—EVIDENCE OF OWNERSHIP. That person who made application for registration of automobile in compliance with Laws 1915, c. 80, is found using automobile which bears number issued therefore, constitutes substantial evidence in suit for personal injuries due to operation of the automobile that the person who made application is the owner thereof. (Page 588.)

2. PROPERTY—AUTOMOBILE—EVIDENCE OF OWNERSHIP—REGISTRATION. Application for registration of automobile made in January, 1917, was, when considered in connection with application of 1916 substantial evidence of ownership of automobile in November, 1916. (Page 589.)

3. MUNICIPAL CORPORATIONS—INJURY DUE TO OPERATION OF AUTO-
MOBILE—EVIDENCE OF OWNERSHIP. In action for injury sustained
by plaintiff street sweeper when defendants' alleged chauffeur
backed automobile out of garage knocking plaintiff down, evidence
respecting defendants' ownership of the automobile *held* sufficient
to take the case to the jury. (Page 589.)

4. MASTER AND SERVANT—EVIDENCE OF RELATION—SUFFICIENCY. In
action for injury sustained by plaintiff street sweeper when defend-
ants' alleged chauffeur backed automobile out of garage knocking
plaintiff down, whether the relation of master and servant existed
between chauffeur and defendants *held* under the evidence for the
jury. (Page 589.)

5. MASTER AND SERVANT—ACTS WITHIN SCOPE OF EMPLOYMENT—EVI-
DENCE. In action for injury sustained by plaintiff street sweeper
when defendants' alleged chauffeur backed automobile out of
garage knocking plaintiff down, whether chauffeur was driving auto-
mobile in business of defendants, or either of them, *held* under evi-
dence for jury. (Page 589.)

6. MASTER AND SERVANT—OPERATION OF AUTOMOBILE—LIABILITY—EVI-
DENCE. That chauffeur was driving automobile owned by defend-
ants would not be sufficient, standing alone, to charge them with
consequences of his negligent operation.[1] (Page 590.)

7. MUNICIPAL CORPORATIONS — AUTOMOBILE ACCIDENT — DUTY OF
PLAINTIFF—INSTRUCTION. In action for injuries to plaintiff street
sweeper by automobile, an instruction *held* in effect to merely in-
form jury that plaintiff had right to assume that chauffeur would
exercise ordinary care, so that it was not subject to objection that
it did not correctly state the law respecting plaintiff's duty.
(Page 591.)

8. TRIAL—INSTRUCTION—INVADING PROVINCE OF JURY. In action for
injuries to street sweeper by automobile, instruction that, in de-
termining whether chauffeur was defendants' servant, his acts in
driving defendants' car, etc., might be taken into consideration, *held*
not subject to objection that it assumed facts which should have
been left for determination of jury. (Page 592.)

9. TRIAL—INSTRUCTIONS—CURE OF ERROR. In action for injury to
street sweeper by automobile, instruction that, in determining
whether chauffeur was defendants' servant, chauffeur's actions "in
driving defendants' car" might be taken into consideration, *held*
harmless, even if erroneous, in view of the whole charge. (Page 593.)

[1]*McFarlane* v. *Winters,* 47 Utah, 598, 155 Pac. 437, L. R. A. 1916D,
618; *Ferguson* v. *Winter,* 46 Utah, 321, 150 Pac. 299; *Fowkes* v. *J. I.
Case Co.,* 46 Utah, 502, 151 Pac. 53.

Appeal from the District Court of Salt Lake County, Third District, *Hon. D. H. Morris,* Judge.

Action by John B. Ferguson against C. B. Reynolds and another.

Judgment for plaintiff. Defendants appeal.

AFFIRMED.

*J. Wood* and *Bagley & Ashton* for appellants.

*Marioneaux & Beck* for respondent.

FRICK, C. J.

The plaintiff recovered judgment against the defendants for damages which, he alleged, he suffered by reason of having been injured through the negligence of the defendants' chauffeur in backing defendants' automobile against the plaintiff, knocking him down and running over him on a public street of Salt Lake City. The plaintiff alleged that he was a street sweeper in Salt Lake City and was engaged in that work at the time of the injury. The chauffeur was backing the automobile out of a garage and, in doing so, plaintiff alleges, operated the car negligently without giving any signal or warning, contrary to a certain ordinance of Salt Lake City which is pleaded, and that by reason of such negligence plaintiff was injured as aforesaid. The defendants admitted the ordinance and that the plaintiff was employed by the city as aforesaid, and denied every other allegation contained in the complaint.

The ordinance in question, so far as material here, provides:

"No person in charge of a vehicle shall back the same without ample warning having been given by him; and while backing unceasing vigilance must be exercised not to injure persons or property in the rear," etc.

There is no dispute respecting the chauffeur's failure to give the warning in backing the car out of the garage, nor with respect to striking and injuring the plaintiff. The controversy arises (1) over the ownership of the car and (2) respecting the relation of the chauffeur and the defendants, and as to whether he was at the time acting in the course of his employment.

The defendants insist that the plaintiff did not establish the ownership of the car, and that there is no evidence that the chauffeur at the time of the injury was engaged in the business of the defendants, or either of them.

The defendants, at the close of plaintiff's evidence, interposed separate motions for nonsuit. The court overruled both motions, and they now insist that the rulings of the court constituted prejudicial error for the reason that the evidence fails to establish ownership of the car and also fails to show that the defendants, or either of them, was responsible for the chauffeur's acts in operating the car at the time of the accident. At the close of all of the evidence, defendants also requested the court to direct a verdict in their favor, which was refused, and which refusal is also assigned as error. Both assignments will be considered together.

We have a statute, chapter 80, Laws Utah 1915, which was in force at the time of the accident, which requires every owner of a motor vehicle to register such vehicle in the office of the Secretary of State. The application for registry, for the purpose of identification, must be made on blanks provided by the Secretary of State, and must contain the name, place of residence and address of the applicant, together with a brief description of the vehicle to be registered by giving its name and the name of the manufacturer, together with certain numbers and "motive power." The application must be signed by the owner of the vehicle and must be "verified by oath or affirmation." Upon the application being made as aforesaid, the Secretary of State must assign to each vehicle a distinctive number and must record the same in his office. The number must be furnished to the owner of the vehicle on duplicate plates which must be conspicuously

displayed on the vehicle. The plaintiff produced in evidence an application dated January 8, 1916, which was signed, ''C. B. Reynolds, by C. L. Reynolds.'' In this application the car causing the injury was fully described, and upon it were displayed the plates with the number which the Secretary of State had issued for the car. The application also contained the statement that C. B. Reynolds, one of the defendants, was the owner of the car in question. A like application was made on January 9, 1917, which was signed and sworn to by C. B. Reynolds. The same car is described in the 1917 application which was described in the one of 1916. The first application covered the year 1916, while the second was for the year 1917; applications being required to be made and filed in each year. In addition to the foregoing evidence, plaintiff also proved that the defendants were often seen driving the car which was described in the applications aforesaid and on it were displayed the plates with the numbers issued by the Secretary of State for the two years aforesaid; that the plaintiff was injured on the 14th day of November, 1916; that at the time of the injury the car was driven by one Neff; that said Neff, while in charge of the car, had at different times purchased gasoline for the car in the name of C. B. Reynolds and had the same charged to Reynolds who each month had paid for it; that said Neff on various occasions was seen driving the car with Mrs. C. B. Reynolds, one of the defendants; and that he, while she was present in the car, had purchased gasoline and had the same charged as aforesaid. It was further shown that on the morning of the accident Neff had taken the car to the garage to have it repaired by having some mica or isinglass put in the rear of the top, and that on backing the car out of the garage the plaintiff was injured as before stated. The evidence further showed that Neff, on the very morning of the accident, had purchased gasoline for the car and had it charged to C. B. Reynolds, and that the latter had subsequently paid for it. There was also evidence to the effect that C. B. Reynolds had notified the gasoline dealer to let his chauffeur have gasoline and to charge it to Reynolds, and

that he would pay for it, all of which was done both before and after the accident.

The foregoing, in substance, constitutes plaintiff's evidence, except that he called Mrs. C. B. Reynolds, one of the defendants, as a witness, who testified that her husband at the time of the accident was away from home; that she had neither authorized nor directed Neff to take out the car on the morning in question, and that she did not know that he had taken it out until after the accident had occurred; that Mr. Neff was staying with her and her husband at her request and with the consent of her husband at the time, and had from time to time taken her out in the car at her request.

Defendants' counsel insist that the evidence is insufficient to sustain the verdict. In this connection, counsel contend that the applications made to and filed with the Secretary of State are not sufficient to establish the ownership of the car. We are unable to conceive why our statute was adopted if it was not for the purpose of furnishing at least prima facie evidence of the ownership of motor vehicles. The applicant is required to make oath or affirmation to the statements contained in his application, one of which relates to the ownership of the vehicle. We think the courts generally hold that the applications and numbers or certificates issued under statutes like ours constitute prima facie evidence that the applicant is the owner of the vehicle which is identified in the application. Under our statute the number issued to one owner may not be transferred, nor, in case the vehicle is sold to another, can the number be transferred to the transferee. Nor can the number issued for one vehicle be transferred to another vehicle. If therefore the person making the application for registry is found using the vehicle described in the application and which bears the number issued by the Secretary of State for such vehicle, it certainly constitutes some substantial evidence that such person is the owner of the vehicle so described and which bears such number. To that effect are the cases of *Delano v. Le Bounty*, 62 Wash. 595, 114 Pac. 434; *Trombley v. Stevens-Duryea Co.*, 206 Mass. 516, 92 N.

E. 764; and *Commonwealth v. Sherman*, 191 Mass. 439, 78 N. E. 98. In Berry, Automobiles (2d Ed.) section 609, the author, in referring to this subject, says:

"Evidence that the automobile which caused the plaintiff's injuries displayed a certain license number, and that this number was registered in the office of the Secretary of State in the defendant's name as owner, makes out a prima facie case of ownership in the defendant."

To the same effect are Huddy, Automobiles, section 60, and Davids, the Law of Motor Vehicles, section 40.

Counsel for defendant, however, contend that the application for the year 1917, which was obtained in January of that year following the month of November in which the accident occurred, cannot be considered as evidence for any purpose, since the statements therein contained were made after the accident. If that application stood alone, there would be much force to counsel's contention. When it, however, is considered in connection with the application of 1916, and in connection with the further fact that the two applications described the same vehicle which was claimed and used by the same person, the applications may well be considered together, and when so considered they afford at least some substantial evidence of ownership at the time the accident occurred.

The evidence respecting ownership was therefore sufficient to take the case to the jury, and hence the court did not err in denying the motions for nonsuit upon that ground.

It is, however, further contended that the court erred in denying the motions for nonsuit for the reason that there was no evidence establishing the relation of principal and agent, or master and servant, between Neff, the driver of the automobile, and the defendants, or either of them, at the time of the accident, nor that Neff, at that time, was driving the automobile in the course of his employment or in the business of the defendants or either of them.

Upon this question defendants' counsel cite and reply on the case of *McFarlane v. Winters*, 47 Utah, 598, 155 Pac. 437,

L. R. A. 1916D, 618, and the other two cases referred to in
that opinion, namely, *Ferguson v. Winter*, 46 Utah,
321, 150 Pac. 299, and *Fowkes v. J. I. Case Co.*, 46
Utah, 502, 151 Pac. 53, where we held that the fact that
one person is found driving a vehicle owned by another,
standing alone, is not sufficient to charge the owner of the
vehicle with the consequences of a tort committed by the
driver of the automobile, but in order to charge the owner
of the vehicle causing the injury complained of the com-
plainant must produce some direct evidence of the relation-
ship of the owner and the driver and that the driver was
acting within the scope of his employment at the time of
the accident, or he must produce some facts or circumstances
from which such relationship and the fact that the driver was
acting within the scope of his employment at the time of the
accident can legitimately be inferred. In the McFarlane
Case there was no evidence whatever, either direct or in-
ferential, that the driver of the vehicle was acting within the
scope of his employment. Indeed, there was no evidence that
the driver was in the employ of the defendant at the time.
The same was substantially true in the other two cases re-
ferred to. We adhere to the doctrine laid down in those
cases and reaffirm the same. The facts and circumstances in
this case, as we have pointed out, are quite different from
the facts and circumstances in the other cases referred to.
Taking into consideration all of the facts and circumstances
relating to Neff's conduct in purchasing gasoline and sup-
plies for the use of the car and in taking the car out and in
driving it at the request of Mrs. C. B. Reynolds, one of the
defendants, and for her benefit, and in having the car repaired
at the time the accident occurred, when considered in connec-
tion with the further fact that on that very day he, as was his
custom, had purchased gasoline for the car in the name of
C. B. Reynolds, one of the defendants, which the latter paid
for as was his custom, was sufficient to take the case to the
jury upon this question. The decision in the case of *Delano
v. Le Bounty*, supra, is squarely in point upon this question.
True, the defendants, in their testimony, undertook to ex-

plain some facts and circumstances while denying others, and insisted that Neff used the car at the time without their consent and without the consent of either of them, but had the repairs made without authority from either of them, yet, as pointed out by the Supreme Court of Washington in the case last referred to, the weight and effect of the evidence was for the jury. In that case, as in this, it was contended that the car belonged to the wife and hence the husband was not liable. The case at bar is not one where the ultimate question of liability is left to mere conjecture, but it is based upon facts and circumstances from which the jury could legitimately infer the ultimate fact of liability.

In view of what has been said, it follows that the court did not err in denying the motions for nonsuit upon the latter ground. Nor can it be held that the evidence, as a matter of law, is insufficient to sustain the verdict. True, the jury might well have found a verdict in favor of the defendants, or in favor of one of them, and had they done so we would be equally powerless to interfere therewith.

Neither did the court err in refusing to direct a verdict as requested by the defendants.

It is next contended that the court erred in charging the jury as follows:

"You are further instructed that a street sweeper, or a pedestrian who undertakes to use the street in the line of his employment where it is frequently used by automobiles or other vehicles, has the right without looking and listening to presume that drivers of automobiles are observing the law, and they will so reduce or gauge their speed and are so conducting themselves so as to meet the obligations which circumstances demand of them at such places."

Counsel for defendants insist that the foregoing instruction does not correctly reflect the law respecting plaintiff's duty while on the street. We are of the contrary opinion. The instruction, in effect, merely informed the jury that the plaintiff had a right to assume that the driver of the automobile would exercise ordinary care in driving the car. This cer-

tainly is the law everywhere. No one using a public street or being lawfully thereon is required to assume otherwise than that all persons using the same will exercise ordinary care in doing so and will not expose any one on the street to unnecessary danger. Counsel insist that the instruction was tantamount to charging the jury that the plaintiff was not required to exercise any care. Such is not the legal effect of the instruction, which is, however, made manifest by other instructions in which the plaintiff's duty while using the street was clearly stated.

"In determinging the question whether Neff was a servant of the defendant, you are at liberty to take into consideration the actions of Neff in driving the defendants' car, purchasing gas and other supplies for the car and having the same charged to the defendants and the paying for the same by the defendants, and all the services connecting the circumstances of Neff with the defendants."

It is insisted that the court erred in assuming facts which should have been left for the determination of the jury. For example, counsel say that the court assumed that the car was defendants' car, which was a question of fact for the jury. True, the instruction is not as happily worded in that regard as it could have been, but a mere cursory reading of it shows that by the terms used the court did not intend to, nor did it, assume any fact. What it said in that regard was merely as identifying the car in question and was not a statement that it was defendants' car.

Again, it is insisted that the court assumed the fact that Neff purchased gasoline and other supplies for the car in question, and further assumed that the gasoline was charged to the defendants. Here it is again clear that the court did not assume the things stated as facts, but merely referred to them for the purpose of telling the jury that they were authorized to consider the things enumerated together with all other facts and circumstances in evidence in determining the ultimate question of liability. This is made doubly clear when all of the other instructions are considered in connection with the one here complained of.

Nor does the fact that the court used the term "defendants" in the instruction constitute prejudicial error. If erroneous at all, under all the circumstances and in view of the whole charge, which was clear and explicit, it was harmless. While it is true that ordinarily it constitutes prejudi-          9 cial error for the court to assume any material fact or facts which are in dispute, yet it is also true that where, as here, the matters complained of in that regard are referred to merely for the purpose of indentification or as explanatory, the rule just stated has no application, and especially not where the matters stated are clearly covered in other parts of the instructions and where it is also clear that the jury were not mislead and that the party complaining was not prejudiced.

The foregoing covers all of the errors argued in the brief; and, finding no prejudicial error, the judgment should be, and it accordingly is, affirmed. Appellants to pay costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.