Filed 8/29/22  P. v. Fields CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>     v.<br><br>DARREN FIELDS,<br><br>       Defendant and Appellant. | C094668<br><br>(Super. Ct. No. 18FE016364) |

Defendant Darren Fields was convicted of 15 counts of lewd or lascivious acts, six counts of oral copulation, and three counts of unlawful sexual intercourse.  On appeal, he contends the trial court erred by instructing the jury with a consciousness of guilt instruction pertaining to defendant's false or misleading statements and that his counsel was ineffective for failing to object to the prosecutor's statements during rebuttal argument pertaining to the burden of proof.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was a father figure to sisters, Ta. and T.  The sisters had a fractured relationship with each of their parents and, at various times, lived with defendant.  When

1

Ta. was 15 years old, defendant groomed Ta. into having a secret romantic sexual relationship with him that continued until Ta. ended the relationship when she was 17 years old.

T. is four years younger than Ta. Between the ages of 13 and 16, T. mostly lived with defendant. When T. was staying at defendant's house, he molested her on a weekly basis and several times orally copulated T. or tried to penetrate her vagina with his penis. Defendant would often force T. to rub his penis with her hand.

The sisters learned of each other's abuse and, at the urging of police officers, conducted a pretext phone call with defendant. The phone call started between defendant and Ta. Ta. asked defendant if he had been "doin' the same thing you did to me to her[?]," referring to T. Defendant acted like he did not understand Ta.'s question and, when Ta. explained T. had told her defendant touched her inappropriately and had had sex with her, defendant denied the allegations. Defendant also claimed T. was making up allegations of sexual assault. Ta. then asked defendant to explain why he had molested her. Defendant was shocked by Ta.'s use of the word molested and said he cared about Ta. and that they had been in a relationship. Defendant told Ta. multiple times he did not touch T. and any allegations to the contrary were not true. Ta. told defendant T. said she was going to tell her social worker and he needed to tell Ta. the truth. Defendant insisted T.'s accusations were not true.

T. then got on the phone and over the course of several minutes, she accused defendant of molesting and orally copulating her. Defendant told T. he cared about her and was sorry for the things he had done to her. Defendant did not expressly admit to molesting T., but after a while he apologized for the things he had done to her and acknowledged he had "ruined" her by making her live with "this." After T. demanded defendant apologize for molesting her, defendant said, "I'm sorry for molesting you." Over the next several minutes, T. asked defendant multiple times to explain his conduct. Defendant refused to answer the question, saying there was no answer that would fix

2

everything. T. then asked defendant what she should say when she tells her social worker about the abuse. Defendant encouraged T. not to tell her social worker and suggested they instead take care of it as a family. Defendant assured T. he always cared about her and wanted the best for her. He also told T. that telling her social worker would ruin him and other people in their family.

Following a jury trial, defendant was convicted of 15 counts of lewd or lascivious acts, six counts of oral copulation, and three counts of unlawful sexual intercourse. The trial court sentenced defendant to 36 years and eight months in prison.

Defendant appeals.

## DISCUSSION

## I

### *The Trial Court Properly Instructed The Jury With CALCRIM No. 362*

Defendant contends the trial court erred by instructing the jury with the consciousness of guilt instruction pertaining to a defendant's false or misleading statements. (CALCRIM No. 362.) The People contend defendant forfeited this claim by failing to object to the giving of the instruction at trial. We will address defendant's claim because he argues the perceived error affected his substantial rights by allowing the jury to make an unjustified inference and, as a result, his trial was rendered fundamentally unfair. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1315, fn. 43.) On the merits, defendant's claim lacks merit.

## A

### *Background*

The trial court instructed the jury pursuant to CALCRIM No. 362, as follows: "If the Defendant made a false or a misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime, and you may consider it in determining his guilt. [¶] If you conclude that the Defendant made the statement, it is up to you to

3

decide its meaning and importance. However, evidence that the Defendant made such a statement cannot prove guilt by itself." During closing argument, the prosecution argued defendant's statements to Ta. denying he had sexually abused T. demonstrated his consciousness of guilt because he later admitted the sexual abuse to T.

B

*There Was No Error*

Defendant argues CALCRIM No. 362 was given in error because the false statement relied on by the prosecution was a denial of guilt and not the denial of a collateral matter such as the giving of a false alibi. Relying on *People v. Williams* (2000) 79 Cal.App.4th 1157, defendant argues "[a]llowing a mere denial [of the charges] to be used as evidence of consciousness of guilt would instead permit the illogical and circular argument that the defendant knows he is guilty because he claimed he wasn't."

Defendant's reliance on *Williams* is misplaced. The *Williams* court did not hold that a mere denial of guilt was insufficient to justify an instruction under CALCRIM No. 362. Indeed, the *Williams* court noted the defendant in that case failed to cite to authority for that proposition. (*People v. Williams*, *supra*, 79 Cal.App.4th at p. 1166, fn. 8.) Indeed, our Supreme Court has rejected that argument. (*People v. Bacon* (2010) 50 Cal.4th 1082, 1108.)

In fact, an instruction pursuant to CALCRIM No. 362 is appropriate where there is some evidence, if believed by the jury, the defendant knowingly made a false or misleading statement regarding the charged crime that may show he or she was aware of his or her guilt for the crime. (*People v. Rankin* (1992) 9 Cal.App.4th 430, 435-436 [discussing CALJIC No. 2.03, the predecessor to CALCRIM No. 362].) "[T]here need only be some evidence in the record that, if believed by the jury, would sufficiently support the suggested inference" of consciousness of guilt. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 102-103 [discussing consciousness of guilt instructions CALJIC Nos. 2.04 and 2.06]; see *People v. Bowman* (2011) 202 Cal.App.4th 353, 366

4

["[a] trial court properly gives consciousness of guilt instructions where there is some evidence in the record that, if believed by the jury, would sufficiently support the inference suggested in the instructions"].) The falsity of defendant's statements may be shown by prosecution evidence, including defendant's pretrial statements. (*People v. Kimble* (1988) 44 Cal.3d 480, 496-499; *People v. Edwards* (1992) 8 Cal.App.4th 1092, 1103.)

The evidence of defendant's false or misleading statements goes beyond his mere denials of the charged crimes involving T. Defendant admitted to molesting T. during the pretext phone call. This admission, if believed, proved defendant's denials to Ta. that he molested T. were lies, his assertions that T. was lying were lies, his unspecified apologies to T. for causing her hurt were misleading, and his refusals to call his conduct toward T. molestation were false. An inference from defendant's false and misleading statements is that he knew by acknowledging the truth of T.'s allegations and his conduct he would be admitting to the commission of a crime. Given that defendant later admitted during the pretext phone call to molesting T., his false and misleading statements demonstrated a consciousness of guilt that supported the giving of CALCRIM No. 362.

II

*Defendant Was Not Prejudiced By His Counsel's Failure To Object To The Prosecutor's Statements During Rebuttal Argument Pertaining To The Burden Of Proof*

Defendant contends the prosecutor erred during rebuttal argument by misstating the burden of proof. The People argue defendant forfeited this contention by failing to object and not requesting an admonition in the trial court. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1328 ["[i]t is well settled that making a timely and specific objection at trial, and requesting the jury be admonished . . . , is a necessary prerequisite to preserve a claim of prosecutorial [error] for appeal"].) Anticipating this argument, defendant raises an ineffective assistance of counsel claim regarding his counsel's failure to object on prosecutorial error grounds. We address defendant's ineffective assistance

5

claim and conclude defendant cannot demonstrate he was prejudiced by his counsel's failure to object.

A

*Background*

During closing argument, defense counsel argued that, "as anyone accused of any crime in this country, based on our constitutional foundations, [defendant] gets the benefit of that doubt. He starts with a presumption of innocence, and he gets the benefit of the doubt. [¶] And I'm asking you all to give him the benefit of that doubt. Look at the inconsistencies in this evidence. Evaluate each and every count independently. Are you convinced that those acts occurred? Is it really -- was it really the 'same ol', same ol' ' every single time? Does that even make sense? Think of your own lives. Is it always the same? Don't make the mistake of assuming that everybody would act the way you think they would act when you've never been in that position."

In rebuttal to this argument, the prosecutor said, "[D]on't let it be sold to you that it's okay or maybe it's easier to convict on some but not others. Convict on [Ta.] but not [T.], because when you look at all of the evidence together -- which is how you are told to evaluate this case. The reasonable doubt instruction says that you must, must compare and contrast all of the evidence before determining if the People have proved the case beyond a reasonable doubt. [¶] So we don't look at one piece individually and say does that piece -- did that piece get proved beyond a reasonable doubt? No, you look at everything and the totality and say what is a reasonable interpretation of this? Here's all of the evidence taken together, compared and contrasted. Now we're gonna say is it reasonable? Does this evidence, the way that [defense counsel] told us to interpret it, is it reasonable that the Defendant is telling the truth?

"And it's broken down individually by [defense counsel], probably for good reason, because the minute you look at [the evidence] in its totality, there is only one logical conclusion, one painfully obvious conclusion, and that's that the Defendant did it,

6

but when you start separating it and saying, 'Look at this and see if this meets the burden', that's not the right way to do it. You look at everything together and decide what the truth is in this case.

"And, yes, the Defendant is absolutely entitled to the trial he had. He's entitled to a trial, which he got, a fair trial, which he got, by a jury of his peers, which he got, but it doesn't mean that he's entitled to an acquittal. That is not what that means. He has had his due process. And that presumption did follow him, and does, until the minute you walk into that deliberation room, and that's when you look at the evidence, that presumption leaves, and you decide about the truth of what happened here. [¶] And it's time now to go do that, to let you go deliberate, and I am asking you to find the Defendant guilty of all the counts."

B

*Defendant Was Not Prejudiced By His Counsel's Failure To Object*

To establish ineffective assistance, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and, as a result, the defendant suffered prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674, 693-694].) A defendant suffers prejudice when "it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Lewis* (1990) 50 Cal.3d 262, 288.) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Strickland*, at p. 694 [80 L.Ed.2d at p. 698].) "The likelihood of a different result must be substantial, not just conceivable." (*Harrington v. Richter* (2011) 562 U.S. 86, 112 [178 L.Ed.2d 624, 647].) Stated differently, a "defendant must prove prejudice that is a ' "demonstrable reality," not simply speculation.' " (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

Because defendant's claim arises in the context of a prosecutorial error claim, it is instructive to know the standard applicable to that claim of error. "A prosecutor's

7

conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial [error] under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. Furthermore, . . . when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

The People acknowledge defendant was entitled to the presumption of innocence during jury deliberations. (Citing *People v. Arlington* (1900) 131 Cal. 231, 235 [the "presumption of innocence continues not only during the taking of the testimony, but during the deliberations of the jury, and until [it] reach[es] a verdict"].) The People, however, argue the prosecutor's statements are reasonably interpreted to mean the evidence showed the prosecution overcame the presumption, not that the presumption did not apply once the jury entered the deliberation room. We disagree. The prosecutor's statements clearly told the jury the presumption of innocence "leaves" once the jury enters the deliberation room and weighs the evidence. When the statements are viewed in light of the prosecutor's rebuttal argument as a whole and the instructions given, however, it is not reasonably probable the jury applied the statements in a reprehensible manner or relieved the prosecution of its burden.

Indeed, the prosecutor's comments were in response to defense counsel urging the jury to isolate items of evidence to find reasonable doubt, instead of looking at the entirety of the evidence presented. The prosecutor urged the jury to look to all the evidence and determine the truth. The prosecutor was entitled to make this argument. (CALCRIM No. 220 ["In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial"].)

8

Further, the jury was instructed on the presumption of innocence and the burden the prosecutor had to prove before it could find defendant guilty. (CALCRIM No. 220.) The jury was also instructed that, if the prosecutor's statements of the law conflicted with the instructions, it was required to follow the instructions. (CALCRIM No. 200.) Given the whole of the prosecutor's argument and the instructions, it is not reasonably probable a more favorable outcome would have resulted had defense counsel objected to the prosecutor's statements and had the court delivered a curative admonition. Accordingly, defendant's claim of ineffective assistance of counsel lacks merit.

## III

### *There Was No Cumulative Error*

Defendant contends cumulative error resulted from the combined effect of the individual errors alleged in his opening brief. "Cumulative error is present when the combined effect of the trial court's errors is prejudicial or harmful to the defendant." (*People v. Capers* (2019) 7 Cal.5th 989, 1017.) "The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial.' " (*People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.) Because we rejected defendant's individual claims of error, we conclude there was no cumulative error.

## DISPOSITION

The judgment is affirmed.

/s/_____
Robie, Acting P. J.

We concur:

/s/_____
Hull, J.

/s/_____
Boulware Eurie, J.

9